Daniel Fleming, Esq. (Bar No. 18631986)
WONG FLEMING P.C.
821 Alexander Road, Suite 200
Princeton, New Jersey 08540
(609) 951-9520
Fax: (609) 951-0270

*Attorney for Plaintiff Chem Rx Pharmacy*
*Services, LLC f/k/a Chem Rx Acquisition*
*Sub, LLC, as assignee of Chem Rx*
*Corporation d/b/a Chem Rx New Jersey*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| Chem Rx Pharmacy Services, LLC f/k/a Chem Rx Acquisition Sub, LLC, As Assignee of ChemRx New Jersey, LLC, | : : : : DOCKET NO.  2:16-cv-08442-MCA-MAH |
| Plaintiff | : CIVIL ACTION |
| v. | : **OPPOSITION TO CORPORATE** : **DEFENDANTS' MOTION TO** **DISMISS PLAINTIFF'S** **COMPLAINT** |
| North Bergen Health Care, LLC d/b/a Hudson View Care and Rehabilitation Center, et al. | : : : : |
| Defendants. | : : : : |

# TABLE OF CONTENTS

I.    **Introduction and Statement of Facts** ............................................... 1

II.   **Standard of Review** ................................................................................ 4

III.  **Argument** ................................................................................................ 4

    A.    **Chem Rx States A Valid Claim Against The Facility Defendants For Breach of the Settlement Agreement** .......... 4

    B.    **The Claim for Breach of the Wyndmoor Settlement Agreement (Count II) May Be Brought in This Court** ........ 9

    C.    **Chem Rx Sufficiently Alleged a Claim for Unjust Enrichment (Count III) Against the Facility Defendants** ................................................................................ 11

    D.    **The Quantum Meruit (Count IV) and Tortious Interference (Count V) Claims Should Not Be Dismissed** .............................................................................. 15

    E.    **Conclusion** .......................................................................... 17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) .................. 4

*Summit Transp. Corp. v. Hess Energy Mktg., LLC*, No. CIV.A. 14-5119, 2015 WL 858153, at *2 (D.N.J. Feb. 27, 2015) ............................................ 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................... 4, 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................... 4, 7

*Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. CV 15-4318, 2016 WL 7231598, at *2 (D.N.J. Dec. 14, 2016) ......................................... 5

*RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, 2009 WL 2580354, at *6 (D.N.J. Aug.19, 2009)............................................................................. 5

*WPG Subsidiary Holdings I, LLC v. City of Elizabeth, New Jersey*, No. CV157876KMMAH, 2016 WL 3844207, at *5 (D.N.J. July 15, 2016) . 8

*Dzielak v. Whirlpool Corp.,* 26 F. Supp. 3d 304, 330 (D.N.J. 2014) .... 11 - 13

*Palmeri v. LG Electronics USA, Inc.,* No. 07–CV–5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008)...................................................................... 11, 12

## <u>Codes, Rules and Statutes</u>

Fed. R. Civ. P. 15 ............................................................................................. 3

Fed. R. Civ. P. 12(b)(6)................................................................................. 4, 5

Fed. R. Civ. P. 41(a)(1)(A)(i) .......................................................................... 3

Fed. R. Civ. P. 8(a)........................................................................................... 6

N.J. Rev. Stat. § 12A:2-201 ............................................................................. 7

N.J. Rev. Stat. § 12A:2-201(3)(c) ............................................................. 7, 16

Fed. R. Civ. P 8(d)(2) and (3) ................................................................ 12, 15

42 U.S.C. § 1395cc(a)(1)(H)(ii) ..................................................................... 14

42 U.S.C. §1395yy(e)(2)(A) ........................................................................... 14

42 U.S.C. § 1395x(w) ..................................................................................... 14

N.J. Rev. Stat. § 12A:2-201(1) ...................................................................... 15

## **OTHER AUTHORITIES**

Medicare Claims Processing Manual, Chapter 6, Sections 10, 10.01 and 10.04
............................................................................................................... 13

Medicare Claims Processing Manual, Chapter 6, Sections 10.4 ...................... 14

## I.      Introduction and Statement of Facts

Plaintiff Chem Rx Pharmacy Services, LLC f/k/a Chem Rx Acquisition Sub, LLC, as Assignee of ChemRx New Jersey, LLC ("Chem Rx") filed this litigation to recover over $2.5 million for pharmacy-related goods and services it provided to Defendants North Bergen Health Care, LLC d/b/a Hudson View Care and Rehabilitation Center ("Hudson View"); RC Operator, LLC d/b/a Willow Terrace ("Willow Terrace"); Wyndmoor Care Center, LLC d/b/a Wyndmoor Hills Health Care & Rehab Center f/k/a Chestnut Hill Rehab Center, LLC ("Wyndmoor") (collectively, the "Facility Defendants") for use by the residents of the three skilled nursing facilities owned and operated by the Facility Defendants.  Each of the Facility Defendants is controlled by and under common ownership with Skyline Health Care, LLC ("Skyline") and Kotel Management Corp. ("Kotel") (the Facility Defendants, Skyline, and Kotel are collectively, the "Corporate Defendants"). Faced with numerous claims relating to their failure to pay for the pharmacy goods and services they ordered from Chem Rx and that Chem Rx provided, the Corporate Defendants now make a multitude of meritless arguments to attempt to avoid responsibility for their financial obligations.

As set forth in the Complaint, Chem Rx entered into a Vendor Pharmacy Contract with Hudson View in 2007 to provide Hudson View and its residents with pharmacy-related goods and services.   (Compl., DN 1, ¶¶17-19.)   Chem Rx

delivered goods and services to Hudson View, and delivered monthly invoices to Hudson View, but Hudson View failed and refused to pay for those goods and services, the value of which exceeds $939,000, exclusive of interest. (*Id.* ¶22.)

As also set forth in the Complaint, Chem entered into an agreement with Willow Terrace under which Chem Rx provided Willow Terrace and its residents with pharmacy-related goods and services. (*Id.* ¶26.) However, Willow Terrace has failed and refused to pay for those goods and services, the value of which exceeds $637,000, exclusive of interest. (*Id.* ¶32.)

Additionally, Chem Rx entered into an agreement with Wyndmoor's predecessor-in-interest in 2008. (*Id.* ¶36.) Chem Rx filed a lawsuit in 2011 in connection with amounts owed for the pharmacy-related goods and services provided by Chem Rx to Wyndmoor and its residents. Chem Rx entered into a settlement agreement relating to that action on January 24, 2013 (the "Wyndmoor Settlement Agreement") with Skyline, Kotel, Defendant Joseph Schwartz, and three other entity defendants that are not parties to this lawsuit. (*Id.* ¶40 and Exhibit A to Complaint.)   Under the Wyndmoor Settlement Agreement, Wyndmoor was required to make monthly payments to Chem Rx. (*Id.* ¶41 and Exhibit A to Complaint at ¶1). If Wyndmoor failed to make such payments, all amounts claimed by Chem Rx in the 2011 lawsuit would become immediately due and payable, and Chem Rx could sue Wyndmoor, Skyline, Kotel, Schwartz, and

the other entity signatories to the Wyndmoor Settlement Agreement for such accelerated amounts.  (*Id.* ¶42 and Exhibit A to Complaint at ¶5).  Wyndmoor failed to make the required monthly payments to Chem Rx.  (*Id.* ¶43).

Meanwhile, Wyndmoor and Chem Rx entered into a new agreement for Chem Rx to provide Wyndmoor and its residents with pharmacy-related goods and services.  (*Id.* ¶44.)  Wyndmoor has failed and refused to pay for those goods and services, the value of which exceeds $1,091,000, exclusive of interest.  (*Id.* ¶50.)

Chem Rx brought claims for breach of contract against the Facility Defendants failures to pay for the pharmacy goods and services Chem Rx provided (Compl. at Count I).  It also brought a claim against Wyndmoor, Skyline, and Kotel for breach of the Wyndmoor Settlement Agreement (*Id.* at Count II).  In addition to its claims for breach of contract, and as alternative theories to those counts, Chem Rx brought claims against the Facility Defendants for unjust enrichment (*Id.* at Count III) and quantum meruit (*Id.* ¶¶94-98.).  Finally, Chem Rx claims that Skyline tortiously interfered with Chem Rx's contracts with the Facility Defendants.  (*Id.* ¶¶100-104.)[1]

---

[1] Chem Rx also asserts claims against the various Corporate Defendants for the breaches and actions of one another under an alter ego theory of liability. However, Chem Rx, without waiving its right to replead those allegations after additional discovery in this action pursuant to Federal Rule of Civil Procedure 15 or by a new action after a judgment is entered against the remaining parties, will voluntarily dismiss such claims against the respective Corporate Defendants without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

## II.     Standard of Review

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008).  A dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Id.*; *Summit Transp. Corp. v. Hess Energy Mktg., LLC*, No. CIV.A. 14-5119, 2015 WL 858153, at *2 (D.N.J. Feb. 27, 2015).  The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  A complaint must be allowed to proceed if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Argument

### A. Chem Rx States A Valid Claim Against The Facility Defendants For Breach of Contract for Failure to Pay for Goods and Services Provided.

Under New Jersey law[2], the elements for breach of contract are: "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach."

---

[2] Two of the Facility Defendants, Wyndmoor and Willow Terrace, are located in Pennsylvania while Chem Rx is located in New Jersey.  For purposes of this

*Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. CV 15-4318, 2016 WL 7231598, at *2 (D.N.J. Dec. 14, 2016).[3]  Here, Chem Rx alleges with respect to each of the Facility Defendants that it entered into a valid agreement with each Facility Defendant to provide that Facility Defendant and its residents pharmacy-related goods and services.  (Compl. ¶¶26, 36, 44.)  Chem Rx further alleges that it provided such goods and services to the Corporate Defendants and invoiced them for those goods and services, but they failed to pay Chem Rx the agreed-upon amounts.  (Compl. ¶¶ 19, 21-22, 28-29, 31-32, 45-47, 50.)

The Corporate Defendants nevertheless allege that the allegations are insufficient to state a claim for breach of contract and "do not rise above a speculative level."  (Motion at 8.)  However, the Complaint alleges facts well beyond speculation.  Taking the factual allegations as true, Chem Rx has alleged an agreement existed between it and each of the Facility Defendants and the essential term of that agreement: that Chem Rx would provide pharmacy-related

motion to dismiss it does not matter which law eventually is applied, as there are no material differences in the elements for a breach of contract claim under Pennsylvania or New Jersey Law.  *See RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, 2009 WL 2580354, at *6 (D.N.J. Aug.19, 2009) ("It is clear that the elements required for ... breach of contract claims are substantially similar in New Jersey and Pennsylvania.").

[3] The Corporate Defendants correctly note that Paragraph 68 of the Complaint contains a typographical error.  That Paragraph should state that the allegations in the prior paragraphs should be incorporated by reference, not just those in the first fifteen paragraphs.  As the Corporate Defendants suggest, the Court should find the mistake a curable error, but in any event the Court should look at the Complaint as a whole to determine whether the allegations meet the standard of Rule 12(b)(6).

drugs and services to the Facility Defendants and their residents, and the Facility Defendants would pay Chem Rx for such pharmacy-related goods and services.

Further, Chem Rx has alleged that the agreement it had with Hudson View was embodied in a Vendor Pharmacy Contract that the two parties entered into in 2007.   (Compl. at ¶17).   Meanwhile, Willow Terrace's and Wyndmoor's agreements with Chem Rx were embodied by written orders from Willow Terrace and Wyndmoor that Chem Rx fulfilled, thereafter issuing monthly invoices reflecting the charges for the drugs provided.  (Compl. at ¶¶27-28, 45-46).

These allegations are facts that must be taken as true, rather than conclusory legal statements that are ignored when assessing a motion to dismiss for failure to state a claim.  Moreover, given Federal Rule of Civil Procedure 8(a)'s command that a Complaint contain nothing more than a short and plain statement of the claim, these allegations are clearly sufficient to establish the existence of the contracts that Chem Rx claims were breached.  Chem Rx also met that requirement as to breach and damages through its allegations that the Facility Defendants failed to pay in accordance with the agreements for the pharmacy-related goods and services Chem Rx provided, causing damage to Chem Rx, which is currently owed millions of dollars by the Facility Defendants.

In fact, the gist of the Corporate Defendants' argument is not that Chem Rx's factual allegations do not state a claim, but that Chem Rx did not provide

precise dates for each breach of the parties' agreements.  However, that is not the inquiry on a motion to dismiss for failure to state a claim.  The sole question is whether Chem Rx alleged a short and plain statement of facts that shows a right to relief.  As set forth above, Chem Rx alleged that the Facility Defendants agreed to order pharmacy goods and services from Chem Rx and pay for them, that Chem Rx provided the pharmacy goods and services that the Facility Defendants ordered, but that the Facility Defendants failed to pay what was owed.  Nothing more is required.  Despite the Corporate Defendants' citations to *Twombly* and *Iqbal*, nothing in those cases stands for the proposition that every single term of an agreement must be alleged or that all dates of all breaches of an agreement must be pled before a claim for breach of contract can stand.[4]

The Corporate Defendants next suggest that the statute of limitations bars Chem Rx's breach of contract claims against the Facility Defendants.  However, as the Corporate Defendants themselves acknowledge, a motion to dismiss "cannot

---

[4] The Corporate Defendants suggest, without making a full argument, that some of the agreements between Chem Rx and the Facility Defendants may be oral contracts that are unenforceable under the Statute of Frauds.  (Motion at 8).  The statutory provision of the New Jersey Uniform Commercial Code cited by the Corporate Defendants in support of that notion thoroughly destroys it.  (*See id. citing* N.J. Rev. Stat. § 12A:2-201).  Even setting aside that the Facility Defendants submitted written orders to Chem Rx which fulfilled the orders and then submitted invoices to the Facility Defendants, New Jersey Revised Statute Section 12A:2-201(3)(c) specifically states that the Statute of Frauds does not apply "with respect to goods . . . which have been received and accepted."  Chem Rx's Complaint repeatedly refers to the pharmacy goods and services it provided the Facility Defendants, all of which were received and accepted by the Facility Defendants.

typically" be based on such a defense.  (Motion at 8-9.)  Indeed, they concede the complaint must affirmatively demonstrate "noncompliance" with the limitations period before it can be dismissed on that ground.  (*Id.* at 9.)   That is, dismissal is appropriate "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  *WPG Subsidiary Holdings I, LLC v. City of Elizabeth, New Jersey*, No. CV157876KMMAH, 2016 WL 3844207, at \*5 (D.N.J. July 15, 2016) (internal citations omitted).  As is plain even from the Corporate Defendants' Motion, nowhere in the Complaint is there an allegation that an amount is owed that falls outside the statute of limitations period.[5]  Nor is such an allegation required.

A comparison to *WPG Subsidiary* illuminates the lack of merit in the Corporate Defendants' arguments on this issue.  In *WPG Subsidiary,* the court noted that the breach at issue in the complaint was ongoing and may have involved certain acts outside the limitations period.  *Id.*  Notwithstanding such a *potential* limitation, the court denied the motion to dismiss "without prejudice to reassertion of the statute of limitations on a motion for summary judgment after appropriate

---

[5] Chem Rx notes that it is well aware of the statute of limitations under the Uniform Commercial Code and further notes that the information concerning the various unpaid invoices on which it bases its breach of contract claim in Count I of the Complaint will inevitably be provided to the Corporate Defendants in discovery, at which point the Corporate Defendants may raise any statute of limitations issues they believe have merit.  However, Chem Rx is confident that the amounts it seeks from the Facility Defendants fall within the statute of limitations.

discovery." *Id.* (noting "[m]ost commonly, then, a statute of limitations issue cannot be resolved on a motion to dismiss, and this case is no exception."). So too for the Corporate Defendants: if discovery yields evidence that certain of their breaches fall outside the statute of limitations, the Corporate Defendants can make an appropriate motion to raise their statute of limitations defense. However, there is no basis whatsoever for dismissing Chem Rx's claims before that time based on nothing more than speculation by the Corporate Defendants that some of the unpaid invoices for which Chem Rx has sued them fall outside the limitations period.[6]

### B. The Claim for Breach of the Wyndmoor Settlement Agreement (Count II) May Be Brought in This Court.

Turning to Count II of the Complaint, for breach of the Wyndmoor Settlement Agreement against Wyndmoor, Skyline, and Kotel, the Corporate Defendants claim that the Wyndmoor Settlement Agreement, attached as Exhibit A to the Complaint, obligates the parties to litigate the agreement in Pennsylvania. They are wrong.

In particular, the Wyndmoor Settlement Agreement contains a choice of law provision stating that the agreement should be "interpreted, enforced, and governed under the *laws* of the State of Pennsylvania." (Ex. A to Compl. at ¶9 (emphasis

---

[6] To the extent the Court determines that Chem Rx must identify with particularity each of the unpaid invoices that underpin the Facility Defendants' breaches of their agreements with Chem Rx to show that the breaches were within the limitations period, Chem Rx respectfully requests leave to amend its Complaint to include such information.

added).)  This provision is nothing more than a choice of law provision.  It says nothing about the particular forum or venue in which litigation must be brought, only that whatever that forum or venue is should apply Pennsylvania law to the claims based on that agreement.  Indeed, the Wyndmoor Settlement Agreement is silent on what court and in what jurisdiction the agreement must be enforced.

The Corporate Defendants also contend that the Wyndmoor Settlement Agreement "contemplates payments to be made only by Chestnut Hill[,]" and, therefore, Count II should be dismissed as it relates to Skyline and Kotel.  This argument ignores the other language in the Wyndmoor Settlement Agreement which states that, in the event of a failure to make a required payment under the Wyndmoor Settlement Agreement, Kotel and Skyline agree that "Chem Rx may file suit against [Wyndmoor][7] and the Additional Defendants [which include Kotel and Skyline] to seek recovery of all sums claimed in the complaint filed in the Litigation."  (Ex. A to Compl. at ¶5.)  Thus, while the Wyndmoor Settlement Agreement may have called for Wyndmoor to make the payments, it specifically and unequivocally provided that Skyline and Kotel could be sued if Wyndmoor breached that obligation.  Therefore, neither Skyline nor Kotel should be dismissed from Count II.

---

[7] Wyndmoor is referred to in the 2013 Wyndmoor Settlement Agreement as "Montgomery."  For ease of reference and consistency with the Complaint, Chem Rx has replaced "Montgomery" with "[Wyndmoor]" in quotations of the 2013 Wyndmoor Settlement Agreement.

### C. Chem Rx Sufficiently Alleged a Claim for Unjust Enrichment (Count III) Against the Facility Defendants.

To state a claim for unjust enrichment, Chem Rx must allege that (1) at Chem Rx's expense (2) the Facility Defendants received a benefit (3) under circumstances that would make it unjust for the respective Facility Defendant to retain benefit without paying for it." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014). At the pleading stage, Chem Rx need only allege facts sufficient to show: 1) Chem Rx conferred a benefit on the Facility Defendants; and 2) circumstances are such that to deny recovery would be unjust. *Id. citing Palmeri v. LG Electronics USA, Inc.,* No. 07–CV–5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008).

Although Chem Rx has satisfied all the elements required for this claim, the Facility Defendants claim that Chem Rx fails to state a claim because the dispute is allegedly governed by express contracts. (Motion at 11-13.) However, although Chem Rx has brought a claim for breach of contract against each of the Facility Defendants, as the *Dzielak* court noted, "unjust enrichment is a backstop cause of action that often turns out to be superfluous if, for example, a breach of contract is shown." *Dzielak*, 26 F. Supp. 3d at 331. Indeed, such an alternative claim is expressly permitted under Fed. R. Civ. 8(d)(2) and (3) which state that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," and that a

11

party "may state as many separate claims or defenses as it has, regardless of consistency."

Accordingly, the Court must reject any argument that suggests that Chem Rx is precluded from bringing a claim for unjust enrichment because the claim is inconsistent with other allegations. *See Dzielak*, 26 F. Supp. 3d at 331 ("At this stage, it would be premature to dismiss an unjust enrichment claim simply because it may later be eclipsed by some other cause of action."); *Palmeri*, 2008 WL 2945985 at *7 ("unjust enrichment is, by its nature, an alternative remedy to contract and tort remedies . . . . It is inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery on the contract.").

Finally, the Corporate Defendants complain that Chem Rx "asserts an unsupported legal conclusion that the Corporate Defendants owe a fiduciary duty to Plaintiff."[8] (Motion at 11-12 *citing* Compl. at ¶¶87-88)  However, while Chem Rx made such an allegation, that allegation is not the crux of a fiduciary duty claim that could be dismissed if the Court disagrees that the Facility Defendants owed any such duty to Chem Rx.  Instead, that allegation simply underlies Chem Rx's claim for unjust enrichment and a constructive trust.

---

[8] Chem Rx only asserts a claim against the Facility Defendants and only claimed that the Facility Defendants have a legal and fiduciary duty to immediately remit to Chem Rx proceeds received in reimbursement from Medicare.  (Compl. ¶ 88.)

Chem Rx does not need to allege that a fiduciary duty or relationship exists in order to sufficiently plead such a claim for unjust enrichment and a constructive trust.  Under New Jersey law, Chem Rx must merely allege that it conferred a "direct benefit" and "a sufficiently direct relationship with the defendant to support the claim." *Dzielak*, 26 F. Supp. 3d at 331.  Here, the pharmacy-related goods and services – the benefit – were conferred directly to the Corporate Defendants irrespective of whether there was a fiduciary relationship.  Accordingly, there is a sufficiently direct relationship to support an unjust enrichment claim.

In any event, Chem Rx's claim that the Facility Defendants had a legal and fiduciary duty to remit Medicare payments to Chem Rx is well founded in the law. For residents of the skilled nursing facilities owned and operated by the Facility Defendants who are covered by Medicare Part A, the Facility Defendants receive reimbursement from Medicare for virtually all of the services that the Facility Defendants provide to such residents (including pharmacy goods and services) (this is known as consolidated billing).  *See, e.g.*, Medicare Claims Processing Manual, Chapter 6 at Sections 10, 10.1, and 10.4, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c06.pdf; 42 U.S.C. 1395y(a)(18); 42 U.S.C. § 1395cc(a)(1)(H)(ii); 42 U.S.C. § 1395yy(e)(2)(A).  The Facility Defendants must supply all such services themselves or arrange with an "under

13

arrangements" provider, as described in 42 U.S.C. § 1395x(w), to provide such services.  In turn, it is incumbent upon the Facility Defendant to then reimburse the under arrangements providers for all Medicare-covered services that are subject to consolidated billing, for which the Facility Defendants are thus receiving reimbursement directly from Medicare.  *See, e.g.*, Medicare Claims Processing Manual, Chapter 6 at Section 10.4.  Notably, if a skilled nursing facility fails to reimburse its under arrangements provider for a service or good provided, then Medicare would not cover the services at issue.  *Id.* at Section 10.4.1.  A skilled nursing facility that demonstrates a pattern of nonpayment to under arrangements providers would even be placing its Medicare provider agreement at risk since the Medicare provider agreements specifically require skilled nursing facilities to comply with the requirements of consolidated billing, including utilizing Medicare reimbursement to pay for all services provided to the Medicare Part A residents.  *Id.*

In accordance with the foregoing, Chem Rx properly alleged that the Facility Defendants have been reimbursed by Medicare for all or a significant portion of the pharmacy-related goods and services provided by Chem Rx to them.  (Compl. ¶¶24, 34, 52).  And, inasmuch as the Facility Defendants received such Medicare reimbursement the Medicare statutes, their Medicare provider agreements, and their agreements with Chem Rx required them to remit to Chem Rx in exchange

14

for the necessary pharmacy related goods and services Chem Rx had already provided.  Thus, Chem Rx's allegation (Compl. ¶88) that the Facility Defendants had a legal and fiduciary duty to remit such proceeds to Chem Rx is accurate.

### D. The Quantum Meruit (Count IV) and Tortious Interference (Count V) Claims Should Not Be Dismissed.

As with their argument against Chem Rx's claim for unjust enrichment, the Corporate Defendants contend that the claim for Quantum Meruit and Tortious Interference with Contractual Relations should be dismissed because they are inconsistent with other claims brought in the Complaint.  Such claims are expressly permitted under Fed. R. Civ. P. 8(d)(2) which states "A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Accordingly, the Court must reject any argument that suggests that Chem Rx is precluded from bringing these to the extent they are inconsistent with other allegations.

Additionally, with respect to the Quantum Meruit claim, the Corporate Defendants allege that to the extent Chem Rx relies on oral agreements, such claims are barred by the Statute of Frauds, NJ Rev. Stat. § 12A:2-201(1).  The Corporate Defendants, however, ignore the many exceptions to the Statute of Frauds, including for example, with respect to goods which have been received and accepted. *Id.* §12A:2-201(3)(c).

The Corporate Defendants further contend that Count V for Tortious Interference must be dismissed because Chem Rx has failed to allege Skyline's interference was done without justification.  In the Complaint, however, Chem Rx makes several allegations that sufficiently allege Skyline acted without justification.  For example, in Paragraph 56, Chem Rx alleges that when Chem Rx attempted to collect money pursuant to the parties' respective contracts, "Skyline's Chief Executive Officer and Skyline's Chief Financial Officer would determine whether and how much to pay Chem Rx." (Compl. ¶ 56.)   Chem Rx further alleges that Skyline caused the Facility Defendants to refuse to pay Chem Rx the funds to which it contractually was entitled in order "to divert funds owed Chem Rx for the benefit of Skyline … or to harm Chem Rx." (Compl. ¶59.)  This argument, like all of the others, has no merit.

### E. Conclusion

In sum, Chem Rx's has set forth the short and plain statement of its claims required by the Federal Rules of Civil Procedure, and the Corporate Defendants' Motion should be denied.  To the extent the Court finds any merit to the Motion, Chem Rx respectfully asks the Court to grant Chem Rx leave to amend its Complaint to allege additional facts consistent with any such decision by the Court.

Dated: February 21, 2017

Respectfully submitted by:

WONG FLEMING
Attorneys for Plaintiff
*/s/ Daniel C. Fleming*
By:  Daniel C. Fleming

And

Benjamin C. Fultz, *Pro Hac Vice Admission to Be Sought*
Matthew Cory Williams, *Pro Hac Vice Admission to Be Sought*
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
(502) 588-2000
Fax:  (502) 588-2020
bfultz@fmdlegal.com
mwilliams@fmdlegal.com